# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action No. 3:22-CV-00121-N | |
| v. ) | |
| ) | |
| **PHILLIP W. OFFILL, JR. and** ) | |
| **JUSTIN W. HERMAN,** ) | |
| ) | |
| Defendants. ) | |

**CONSENT OF DEFENDANT**
**JUSTIN W. HERMAN**

1.      Defendant Justin W. Herman ("Defendant") acknowledges having been served with the Complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the Complaint in this action.  Specifically, in *United States of America v. Phillip Windom Offill and Justin Wallace Herman*, Case No. 1:22-cr-00152-RDA-2 (hereinafter the "Criminal Case"), filed in the United States District Court for the Eastern District of Virginia, Defendant pleaded guilty to conspiracy to commit securities fraud and wire fraud in violation of 18 U.S.C. § 1349.  In connection with his plea, Defendant admitted the facts set out in his Plea Agreement and the accompanying statement of facts, which are attached as Exhibits A and B to this Consent.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in the Criminal Case.

3.      Defendant hereby consents to the entry of the Final Judgment in the form attached

hereto as Exhibit C (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)    permanently restrains and enjoins Defendant from violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17.C.F.C. § 240.10b.5] thereunder;

(b)    permanently restrains and enjoins Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal account;

(c)    permanently restrains and enjoins Defendant from participating in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock; and

(d) orders Defendant to pay disgorgement in the amount of $935,024.43, plus prejudgment interest of $182,300.31.

4.    Defendant agrees that his obligation to pay disgorgement and related prejudgment interest ordered in this civil proceeding is deemed satisfied by the order of restitution entered in the Criminal Case.

5.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Final Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal

or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the Complaint in this action.

12.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty pleas for the related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the Complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the Complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the Complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment

or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 2/11/24

Justin W. Herman

Consent of Justin W. Herman

Page 5

On _February 11_ , 2024, _Justin W. Herman_ , a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
RACHEL O. GARDNER
Federal Correctional Institution
PO Box 1000  446 Green Bag Road, Morgantown WV 26507
My Commission Expires 04/21/2025

Notary Public
Commission expires: _04·21·2025_

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

MAR 1 3 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.

No. 1:22-CR-152

JUSTIN WALLACE HERMAN,

Defendant.

## PLEA AGREEMENT

Jessica D. Aber, United States Attorney for the Eastern District of Virginia; Glenn S. Leon, Chief of the Fraud Section, Criminal Division of the U.S. Department of Justice; undersigned counsel for the United States; the defendant, Justin W. Herman; and the defendant's counsel have entered into an agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The terms of this Plea Agreement are as follows:

### 1.    Offense and Maximum Penalties

The defendant agrees to plead guilty to Count One of the Indictment, charging the defendant with conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 1349. The maximum penalties for this offense are: a maximum term of 25 years of imprisonment, a fine of the greater of $250,000 or twice the gross gain or loss, full restitution, forfeiture of assets as outlined below, a special assessment pursuant to 18 U.S.C § 3013, and a maximum supervised release term of 5 years. The defendant understands that any supervised release term is in addition to any prison term the defendant may receive, and that a violation of a term of supervised release could result in the defendant being returned to prison for the full term of supervised release.

**2.      Factual Basis for the Plea**

The defendant will plead guilty because the defendant is in fact guilty of the charged

offense.  The defendant admits the facts set forth in the Statement of Facts filed with this Plea

Agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable

doubt.  The Statement of Facts, which is hereby incorporated into this Plea Agreement,

constitutes a stipulation of facts for purposes of Section 1B1.2(c) of the Sentencing Guidelines.

**3.      Assistance and Advice of Counsel**

The defendant is satisfied that the defendant's attorney has rendered effective assistance.

The defendant understands that by entering into this Plea Agreement, defendant surrenders

certain rights as provided in this agreement.  The defendant understands that the rights of

criminal defendants include the following:

      a.      the right to plead not guilty and to persist in that plea;

      b.      the right to a jury trial;

      c.      the right to be represented by counsel—and, if necessary, have the court
          appoint counsel—at trial and at every other stage of the proceedings; and

      d.      the right at trial to confront and cross-examine adverse witnesses, to be
          protected from compelled self-incrimination, to testify and present
          evidence, and to compel the attendance of witnesses.

**4.      Sentencing Guidelines, Recommendations, and Roles**

The defendant understands that the Court has jurisdiction and authority to impose any

sentence within the statutory maximum described above, but that the Court will determine the

defendant's actual sentence in accordance with 18 U.S.C. § 3553(a).  The defendant understands

that the Court has not yet determined a sentence and that any estimate of the advisory sentencing

range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant

may have received from the defendant's counsel, the United States, or the Probation Office, is a

prediction, not a promise, and is not binding on the United States, the Probation Office, or the

Court. Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543

U.S. 220 (2005), the Court, after considering the factors set forth in 18 U.S.C. § 3553(a), may

impose a sentence above or below the advisory sentencing range, subject only to review by

higher courts for reasonableness. The United States makes no promise or representation

concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty

plea based upon the actual sentence.

Further, in accordance with Federal Rule of Criminal Procedure 11(c)(1)(B), the United

States and the defendant stipulate and will recommend to the Court that the following provisions

of the Sentencing Guidelines apply:

| Guideline(s) | Description | Offense Level |
|---|---|---|
| U.S.S.G. § 2B1.1 | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1 (b)(1)(I) | Loss amount of more than $1,500,000 and less than $3,500,000 | 16 |
| U.S.S.G. § 2B1.1(b)(2)(A) | Offense (i) involved 10 or more victims; and (ii) was committed through mass-marketing | +2 |
| U.S.S.G. § 2B1.1(b)(10)(C) | Offense Involved Sophisticated Means | +2 |

The United States and the defendant further agree that the defendant has assisted the

government in the investigation and prosecution of the defendant's own misconduct by timely

notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the

government to avoid preparing for trial and permitting the government and the Court to allocate

their resources efficiently. If the defendant qualifies for a two-level decrease in offense level

pursuant to U.S.S.G. § 3E1.1(a) and the offense level prior to the operation of that section is a

level 16 or greater, the government agrees to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior

to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level.

The United States and the defendant have not agreed on any further sentencing issues, whether related to the Sentencing Guidelines or the factors listed in 18 U.S.C. § 3553(a), other than those set forth above or elsewhere in this Plea Agreement. Any stipulation on a Guidelines provision does not limit the parties' arguments as to any other Guidelines provisions or sentencing factors under Section 3553(a), including arguments for a sentence within or outside the advisory Guidelines range found by the Court at sentencing.

The parties further agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence outside of the advisory Guidelines range. Accordingly, the parties agree not to seek or support any sentence outside of the advisory Guidelines range for any reason not set out explicitly in this Plea Agreement.

## 5. Waiver of Appeal, FOIA, and Privacy Act Rights

The defendant also understands that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal, in exchange for the concessions made by the United States in this Plea Agreement. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b). The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

### 6.    Immunity from Further Prosecution in This District

The United States will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the Indictment or Statement of Facts. This Plea Agreement and Statement of Facts does not confer on the defendant any immunity from prosecution by any state government in the United States.

### 7.    Dismissal of Other Counts

As a condition of the execution of this agreement and the Court's acceptance of the defendant's plea of guilty, the United States will move to dismiss the remaining counts pending against this defendant at the conclusion of this defendant's sentencing hearing.

### 8.    Defendant's Cooperation

The defendant agrees to cooperate fully and truthfully with the United States, and provide all information known to the defendant regarding any criminal activity as requested by the government.  In that regard:

a.    The defendant agrees to testify truthfully and completely at any grand juries, trials or other proceedings.

b.    The defendant agrees to be reasonably available for debriefing and pre-trial conferences as the United States may require.

c.    The defendant agrees to provide all documents, records, writings, or materials of any kind in the defendant's possession or under the defendant's care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

d.    The defendant agrees that, at the request of the United States, the defendant will voluntarily submit to polygraph examinations, and that the United States will choose the polygraph examiner and specify the procedures for the examinations.

e.      The defendant agrees that the Statement of Facts is limited to information to support the plea.  The defendant will provide more detailed facts relating to this case during ensuing debriefings.

f.      The defendant is hereby on notice that the defendant may not violate any federal, state, or local criminal law while cooperating with the government, and that the government will, in its discretion, consider any such violation in evaluating whether to file a motion for a downward departure or reduction of sentence.

g.      Nothing in this agreement places any obligation on the government to seek the defendant's cooperation or assistance.

**9.      Use of Information Provided by the Defendant Under This Agreement**

The United States will not use any truthful information provided pursuant to this agreement in any criminal prosecution against the defendant in the Eastern District of Virginia, except in any prosecution for a crime of violence or conspiracy to commit, or aiding and abetting, a crime of violence (as defined in 18 U.S.C. § 16).  Pursuant to U.S.S.G. § 1B1.8, no truthful information that the defendant provides under this agreement will be used in determining the applicable guideline range, except as provided in Section 1B1.8(b).  Nothing in this agreement, however, restricts the Court's or Probation Officer's access to information and records in the possession of the United States.  Furthermore, nothing in this agreement prevents the government in any way from prosecuting the defendant should the defendant knowingly provide false, untruthful, or perjurious information or testimony, or from using information provided by the defendant in furtherance of any forfeiture action, whether criminal or civil, administrative or judicial.  The United States will bring this agreement and the full extent of the defendant's cooperation to the attention of other prosecuting offices if requested.

10.     Prosecution in Other Jurisdictions

The U.S. Attorney's Office for the Eastern District of Virginia will not contact any other state or federal prosecuting jurisdiction and voluntarily turn over truthful information that the defendant provides under this agreement to aid a prosecution of the defendant in that jurisdiction. Should any other prosecuting jurisdiction attempt to use truthful information the defendant provides pursuant to this agreement against the defendant, the U.S. Attorney's Office for the Eastern District of Virginia agrees, upon request, to contact the jurisdiction and ask that jurisdiction to abide by the immunity provisions of this agreement. The parties understand that the prosecuting jurisdiction retains the discretion over whether to use such information.

**11.     Defendant Must Provide Full, Complete, and Truthful Cooperation**

This agreement is not conditioned upon charges being brought against any other individual. This agreement is not conditioned upon any outcome in any pending investigation. This agreement is not conditioned upon any result in any future prosecution that may occur because of the defendant's cooperation. This agreement is not conditioned upon any result in any future grand jury presentation or trial involving charges resulting from this investigation. This agreement is conditioned upon the defendant providing full, complete, and truthful cooperation.

**12.     Motion for a Downward Departure**

The parties agree that the United States reserves the right to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statements, or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, if, in its sole discretion, the United States determines that such a departure

or reduction of sentence is appropriate. In addition, the defendant understands that the Court—

not the United States—will decide what, if any, reduction in sentence is appropriate.

Furthermore, the proceeding established by the Plea Agreement section titled Breach of

the Plea Agreement and Remedies does not apply to the decision of the United States whether to

file a motion based on "substantial assistance" as that phrase is used in Rule 35(b) of the Federal

Rules of Criminal Procedure and Section 5K1.1 of the Sentencing Guidelines and Policy

Statements. As noted above, the defendant agrees that the decision whether to file such a motion

rests in the sole discretion of the United States. In addition, should the defendant violate the Plea

Agreement, as defined in Breach of the Plea Agreement and Remedies, or should the defendant

violate this Cooperation Agreement, the United States will be released from its obligations under

either agreement, including any obligation to seek a downward departure or a reduction in

sentence. The defendant, however, may not withdraw the guilty plea entered pursuant to the Plea

Agreement.

### 13.    Payment of Monetary Penalties

The defendant understands and agrees that, pursuant to 18 U.S.C. § 3613 and 18 U.S.C.

§ 3572, all monetary penalties imposed by the Court, including restitution, will be due

immediately and subject to immediate enforcement by the United States as provided for in

Section 3613. If the Court imposes a schedule of payments, the defendant understands that the

schedule of payments is merely a minimum schedule of payments and not the only method, nor a

limitation on the methods, available to the United States to enforce the judgment. Until all

monetary penalties are paid in full, the defendant will be referred to the Treasury Offset Program

so that any federal payment or transfer of returned property to the defendant will be offset and

applied to pay the defendant's unpaid monetary penalties. If the defendant is incarcerated, the

defendant agrees to participate voluntarily in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. Defendant agrees to make good-faith efforts toward payment of all monetary penalties imposed by the Court.

### 14.    Special Assessment

Before sentencing in this case, the defendant agrees to pay a mandatory special assessment of $100 per felony count of conviction, pursuant to 18 U.S.C. § 3013(a)(2)(A).

### 15.    Restitution

The defendant agrees that restitution is mandatory pursuant to 18 U.S.C. § 3663A(c)(1), and the defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses as determined by the Court. Pursuant to 18 U.S.C. § 3663A(c)(2), the defendant further agrees that an offense listed in Section 3663A(c)(1) gave rise to this Plea Agreement and, as such, victims of the conduct described in the charging instrument, Statement of Facts, or any related or similar conduct shall be entitled to restitution. Without limiting the amount of restitution that the Court must impose, the parties agree that the restitution amount due shall be $1,385,619.41.

The defendant understands that forfeiture and restitution are separate and distinct financial obligations that must be imposed upon a criminal defendant. The defendant further understands that restitution will be enforced pursuant to 18 U.S.C. § 3572, 18 U.S.C. § 3613, and 18 U.S.C. § 3664(m).

The parties acknowledge that determination of the identities, addresses, and loss amounts for all victims in this matter is a complicated and time-consuming process. To that end, defendant agrees that, pursuant to 18 U.S.C. § 3664(d)(5), the Court may defer the imposition of

restitution until after the sentencing; however, defendant specifically waives the 90-day

provision found at Section 3664(d)(5) and consents to the entry of any orders pertaining to

restitution after sentencing without limitation.

### 16.   Forfeiture Agreement

The defendant understands that the forfeiture of assets is part of the sentence that must be

imposed in this case.  The defendant agrees to forfeit all interests in any fraud-related asset that

the defendant owns or over which the defendant exercises control, directly or indirectly.  This

includes any property that is traceable to, derived from, fungible with, or a substitute for the

following: property that constitutes the proceeds of the offense.  The  defendant agrees that the

assets subject to forfeiture include, but are not limited to, the following specific property: a

monetary judgment in the amount of at least $1,258,235.28, representing the amount of proceeds

the defendant personally obtained as a result of the violation in Count One of the Indictment.

The defendant understands that if the assets subject to forfeiture are not available to the

United States to be forfeited, the Court must enter a forfeiture money judgment in the amount of

the unavailable assets. *United States v. Blackman*, 746 F.3d 137 (4th Cir. 2014).  The defendant

acknowledges that as a result of defendant's acts or omissions, the actual proceeds the defendant

obtained as a result of the offense (at least $1,258,235.28) are not available and the defendant

stipulates that one or more of the factors listed at 21 U.S.C. § 853(p)(1) are present in this case.

The defendant further agrees to waive all interest in the asset(s) in any administrative or

judicial forfeiture proceeding, whether criminal or civil, state or federal.  The defendant agrees to

consent to the entry of orders of forfeiture for such property and waives the requirements of

Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the

charging instrument, announcement of the forfeiture at sentencing, and incorporation of the

forfeiture in the judgment.  Defendant admits and agrees that the conduct described in the

charging instrument and Statement of Facts provides a sufficient factual and statutory basis for

the forfeiture of the property sought by the government.

### 17.      Waiver of Further Review of Forfeiture

The defendant further agrees to waive all constitutional and statutory challenges to

forfeiture in any manner (including direct appeal, habeas corpus, or any other means) to any

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the

forfeiture constitutes an excessive fine or punishment.  The defendant also waives any failure by

the Court to advise the defendant of any applicable forfeiture at the time the guilty plea is

accepted as required by Rule 11(b)(1)(J).  The defendant agrees to take all steps as requested by

the United States to pass clear title to forfeitable assets to the United States, and to testify

truthfully in any judicial forfeiture proceeding.  The defendant understands and agrees that all

property covered by this agreement is subject to forfeiture as proceeds of illegal conduct and

substitute assets for property otherwise subject to forfeiture.

### 18.      The Defendant's Obligations Regarding Assets and Financial Investigation

The defendant agrees to fully participate in the United States' pre- and post-judgment

financial investigation.  Such participation includes the identification of assets in which the

defendant has any legal or equitable interest to determine what assets may be available for

payment to restitution, forfeiture, and/or any fine imposed in this case.  The defendant agrees that

the defendant's financial information is subject to investigation and disclosure pre-judgment to

the same extent as financial information will be subject to discovery after judgment is imposed.

The defendant understands that 31 U.S.C. § 3711(h)(1) permits the United States to obtain the

defendant's credit report after sentencing and expressly authorizes the United States to obtain the

defendant's credit report prior to sentencing in this case. The defendant understands that the United States has sole discretion over whether it will obtain defendant's credit report pursuant to this Plea Agreement. If the United States determines that it will obtain defendant's credit report prior to sentencing pursuant to this Plea Agreement, the defendant authorizes the United States, and the United States agrees, to provide a copy to defense counsel upon request. The defendant understands that failure to participate in the financial investigation as described in this paragraph may constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

Within 14 days of a request by the United States, or other deadline agreed upon by the parties, the defendant agrees to provide all information about all of the defendant's assets and financial interests to the United States and the Probation Office and, if requested, submit to a debtor's examination, complete a financial disclosure statement under penalty of perjury, and/or undergo any polygraph examination the United States may choose to administer concerning such assets and financial interests. The defendant also agrees to provide or consent to the release of the defendant's tax returns for the previous five years. The defendant understands that assets and financial interests subject to disclosure include assets owned or held directly or indirectly, individually or jointly, in which the defendant has any legal interests, regardless of title, including any interest held or owned under any other name, trusts, and/or business entities presently and since date of the first offense giving rise to this Plea Agreement, or giving rise to the charges presently pending against the defendant, whichever is earlier.

The defendant shall identify all assets valued at more than $5,000 that have been transferred to third parties since the date of the first offense giving rise to this Plea Agreement, including the location of the assets and the identities of third parties to whom they were transferred. The defendant agrees not to transfer any assets valued at more than $5,000 without

12

approval of the Asset Recovery Unit of the U.S. Attorney's Office until the fine, forfeiture, and restitution ordered by the Court at sentencing are paid in full or otherwise terminated by operation of law. The defendant agrees to take all steps requested by the United States to obtain from any other parties by any lawful means any records of assets contemplated by this paragraph in which the defendant has or had an interest. Until the fine, forfeiture, and restitution ordered by the Court are paid in full or otherwise terminated by operation of law, the defendant agrees to notify the Asset Recovery Unit of the U.S. Attorney's Office of a change in address within 30 days of such change.

The United States will not use any truthful and complete information provided by the defendant pursuant to this paragraph for additional criminal offenses against the defendant in the Eastern District of Virginia, except in any prosecution for a crime of violence or conspiracy to commit, or aiding and abetting, a crime of violence (as defined in 18 U.S.C. § 16). Pursuant to U.S.S.G. § 1B1.8, no truthful information that the defendant provides pursuant to defendant's obligations under this paragraph will be used in determining the applicable guideline range, except as provided in Section 1B1.8(b). Nothing in this agreement, however, restricts the Court's or Probation Officer's access to information and records in the possession of the United States. Furthermore, nothing in this agreement prevents the United States in any way from prosecuting the defendant should the defendant knowingly provide false, untruthful, or perjurious information or testimony, or from using information provided by the defendant in furtherance of any forfeiture action or restitution enforcement action, whether criminal or civil, administrative or judicial.

19.     **Breach of the Plea Agreement and Remedies**

This Plea Agreement is effective when signed by the defendant, the defendant's attorney, and an attorney for the United States. The defendant agrees to entry of this Plea Agreement at the date and time scheduled with the Court by the United States (in consultation with the defendant's attorney). If the defendant withdraws from this agreement, or commits or attempts to commit any additional federal, state, or local crimes, or intentionally gives materially false, incomplete, or misleading testimony or information, or otherwise violates any provision of this agreement, then:

a.     The United States will be released from its obligations under this agreement. The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement.

b.     The defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees to waive any statute-of-limitations defense.

c.     Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the Statement of Facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines, or any other provision of the Constitution or federal law.

Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendant's disclosures and documentary evidence shall be admissible and at which the moving party shall be required to establish a breach of this Plea Agreement by a preponderance of the evidence.

20.    **Nature of the Agreement and Modifications**

This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel.  The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this Plea Agreement or any associated documents filed with the Court, to cause the defendant to plead guilty.  Any modification of this Plea Agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

Jessica D. Aber
United States Attorney

By: _Kimberly R. Pedersen_
Kimberly R. Pedersen
Assistant United States Attorney

Glenn S. Leon, Chief
Criminal Division, Fraud Section
U.S. Department of Justice

By: _____
Andrew Tyler
Amanda F. Lingwood
Trial Attorneys

    <u>Defendant's Signature</u>: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal Indictment.  Further, I fully understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case.  I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  I understand this agreement and voluntarily agree to it.

Date: _____          _____
                                         Justin W. Herman

    <u>Defense Counsel's Signature</u>: I am counsel for the defendant in this case.  I have fully explained to the defendant the defendant's rights with respect to the pending Indictment.  Further, I have reviewed 18 U.S.C. § 3553 and the Sentencing Guidelines Manual, and I have fully explained to the defendant the provisions that may apply in this case.  I have carefully reviewed every part of this Plea Agreement with the defendant.  To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

Date: ___3/13/2023_____          _____
                                 Gregory Stambaugh
                                 Counsel for the Defendant

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION



UNITED STATES OF AMERICA

v.

JUSTIN WALLACE HERMAN,

    Defendant.

Case No. 1:22-CR-152

## STATEMENT OF FACTS

The United States and the defendant, JUSTIN WALLACE HERMAN (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.  From at least approximately in or around November 2016 through at least in or around October 2018, in the Eastern District of Virginia and elsewhere, the defendant did knowingly and intentionally combine, conspire, and agree with Co-defendant PHILLIP WINDOM OFFILL, JR., CO-CONSPIRATOR #1 ("CC-1"), and others, to commit securities fraud (18 U.S.C. § 1348) and wire fraud (18 U.S.C. § 1343), all in violation of 18 U.S.C. § 1349.

2.    Mansfield-Martin Exploration Mining, Inc. ("Mansfield") was a company incorporated in Nevada and headquartered in Tombstone, Arizona.   It held mining claims in Arizona and Idaho.   Mansfield's stock traded on Over The Counter ("OTC") Markets under the stock ticker MCPI.

3.    Co-conspirator Offill orchestrated a fraudulent scheme with the assistance of Defendant Herman, CC-1, and others.   Together they conspired to execute the fraud by causing the transfer of millions of MCPI shares to themselves and entities under their control for little or no cost, and then to profit by fraudulently selling those shares to the general investing public.

1

4.     As part of the scheme, Herman, Offill, and CC-1 provided Mansfield's stock transfer agent and brokerage firms with materially false information, including fraudulent consulting and stock purchase agreements and attorney opinion letters. Herman knew this information was important to Mansfield's stock transfer agent and the brokerage firms in transferring the MCPI shares from Individual 1 to Herman, CC-1, and entities under their control, and for accepting the shares for sale.

5.     Herman and CC-1 then paid third parties, including call centers, to market MCPI shares for sale to the general public.   These third parties solicited investments by calling potential investors nationwide.   Victim investors living in the Eastern District of Virginia purchased MCPI shares marketed by these third parties.   During and in furtherance of the conspiracy, the third party marketers solicited more than ten (10) victims nationwide who invested in MCPI shares as a result of these mass-marketing efforts.

<u>1.5 Million Share Transfer</u>

6.     In or about January of 2017, and as part of the conspiracy, Offill arranged the fraudulent transfer of 1.5 million MCPI shares of stock from Individual 1 to CC-1, and then ultimately to Herman.   These shares were securities within the meaning of 18 U.S.C. § 1348, that is, these shares were securities of an issuer with a class of securities registered under Section 12 of the Securities and Exchange Act of 1934.   As part of the fraudulent scheme, Herman and CC-1 arranged to have these shares transferred to Herman's control because he had the ability to "clear" (i.e., deposit and then sell to the public) penny stocks through Herman's brokers.

7.     In furtherance of the scheme, Offill asked Herman to "clear" the MCPI stock for sale to the public.   Offill and Herman agreed that Offil would be paid before and after the stock cleared and that Herman would be compensated for clearing the stock after expenses, such as

paying for call centers.   Herman's payments in connection with the MCPI share sales were sent from his Intrepid Capital account to an account held in the name of MMM&E and controlled by Offill.

8.      On or about January 23, 2017, Herman emailed CC-1 and asked him to verify that CC-1 authorized the movement of 1.5 million MCPI shares to one of Herman's brokers (Island Capital).

9.      On or about January 31, 2017, Herman caused a wire transfer of $10,000 to be sent from his account at Citizens Bank in Rhode Island to Offill at a Mansfield account at Regions Bank in Dallas, Texas for which Offill was the sole signatory.

10.     On or about February 3, 2017, Herman emailed his broker at Island Capital and directed that the 1.5 million shares of MCPI be sent to his personal account at Huntington National Bank.   In support of this request, Herman attached a fraudulent Stock Purchase Agreement (the "SPA") dated February 2, 2017.   Offill previously created this SPA and forwarded a draft to Herman and CC-1 via email on or about that date for their signature.

11.     To make the transfer of the 1.5 million MCPI shares to Herman appear authorized and legitimate to brokers and others, Herman and CC-1 signed the SPA which provided for the purchase by Herman of 1.5 million shares of MCPI at an aggregate purchase price of $.10/share (or $150,000 in total).   The SPA was fraudulent because Herman never intended to pay and did not pay CC-1 $150,000 for the shares but Herman, CC-1, and Offill needed the SPA to justify and legitimize the transfer of MCPI stock to brokers.

12.     In or around February 2017, CC-1 transferred the 1.5 million shares of MCPI stock to Herman.   Once he received the MCPI shares, Herman successfully deposited them into

one of his accounts (at a trust company not a broker-dealer) and ultimately sold the shares to investors for profit.

13.     On or about April 25, 2017, Offill emailed Herman and asked him to reconcile the MCPI position he held and account for the cash and outstanding MCPI shares.   By this time, Herman had sold some MCPI shares and had paid some of the proceeds of the sales to Offill.   In this email exchange, Herman understood that Offill wanted to know how much more money Herman would be sending to him for the MCPI share sales.   After this exchange of emails, Herman and Offill spoke with one another and accounted for the monies owed, including payments for expenses, such as the call centers, and Herman's commission for clearing stock (approximately 20-25%), and the amount of money to be remitted to Offill.   Herman and Offill subsequently agreed to continue to work together and to execute more MCPI share transfers.

<u>15 Million Share Transfer</u>

14.     Beginning in or around April 2017, Offill facilitated the fraudulent transfer of an additional 15 million MCPI shares owned by Individual 1 to Herman.

15.     On or about June 28, 2017, Offill, using his false "Jimerson" alias, emailed Mansfield's transfer agent a fraudulent Transfer Instruction Form that indicated that Individual 1 wished to transfer the 15 million shares of MCPI to Herman in a share sale transaction for consideration of $750,000 (or $.05 per share).   Herman knew that this Transfer Instruction Form was fraudulent because Herman never paid or intended to pay Individual 1 $750,000 in connection with this transfer. However, Herman and Offill knew that the form needed to be provided to justify the transaction for the stock transfer agent to execute the transaction.

4

16.     A day later, in a June 29, 2017, email to the stock transfer agent, Offill (using the "Jimerson" alias) falsely stated that Individual 1 "sold these share" to Herman and wanted to move them and get paid.

17.     On or about July 11, 2017, Mansfield's stock transfer agent followed Offill's instructions and processed the transfer of Individual 1's 15 million MCPI shares to Herman's brokerage account. After depositing the fraudulently obtained shares into his brokerage account, Herman sold these shares to the public using third parties, including call centers.   For example, in an email sent on or about September 26, 2017, Herman directed his brokers to sell 160,000 shares of MCPI at .044 per share.

18.     Over the next several months, Herman realized proceeds of at least $1.2 million from the sale of MCPI shares.   Herman did not purchase or pay Individual 1 for any of the 15 million MCPI shares that were transferred into his brokerage account.   Herman remitted proceeds from the sale of MCPI to Offill and into financial accounts designated by Offill or by other co-conspirators, including those belonging to Westgrove Partners, Armada Mining and MMM&E.   Herman also personally profited from the sale of the MCPI shares after paying for expenses, such as the call centers.

19.     In or around April 2018, CC-1 also transferred approximately 6.5 million MCPI shares to Herman, which Herman attempted to sell on the open market.   Herman transferred these shares to a brokerage located outside the United States so it could sell the shares on his behalf.   Herman remitted a portion of the proceeds of the sales to CC-1 and retained a portion for himself.

20.     During the conspiracy, CC-1 obtained approximately $127,384.13 from the sale of MCPI shares.   In total, Herman, Offill, and CC-1 received at least $1.3 million in proceeds from their sales of MCPI shares.   The victims suffered a loss of approximately $1.385 million.

<u>Herman's Use of Third Parties</u>

21.     In furtherance of his participation in the conspiracy, and in order to promote or pump up interest in MCPI stock to the general investing public, CC-1 and Herman hired third party "call centers" or individuals to market the shares to victim investors. They typically paid the call center operators between 35-55% of the sales proceeds.

22.     In the beginning, the call centers typically called CC-1 once they identified a prospective investor who was ready to purchase shares.   CC-1 would, in turn, contact Herman (the seller) and pass on the information about the prospective investor caller (the buyer), including the price and volume they were willing to pay for the shares.   Upon receiving that information, Herman attempted to effectuate an immediate transaction at the same price and volume in an effort to "match trade" with the call center buyer.   However, because his MCPI shares were not held at a broker-dealer, Herman was not always able to "capture" these trades in a timely manner.

23.     Later, Herman was in direct contact with the manager of a call center to coordinate and agree on a particular price for the prospective investor to bid in real time.   The call center manager passed this information on to the buyer and Herman would pass it on to a market maker or attempt to sell the shares himself at the offered price.

24.     Herman was aware that the individuals associated with the call centers used false names or aliases and that the owners and operators of the call centers would submit invoices for their services using coded descriptions, such as SEO for "search engine optimization," to conceal

that the invoices were for call centers.   Herman did not disclose to the call centers that the

sellers of the stock (including himself) were the ones who retained their services to market the

MCPI shares to the public or that Offill was involved despite his bar from participating in penny

stock sales.   Herman also understood that the call centers did not fully and truthfully disclose to

the prospective investors all of the relevant facts and information to prospective buyers,

including that Herman had retained the call centers to market the stock that he wished to sell at

35-55% commission, that Herman was match trading, or that he and others, including Offill, had

provided fraudulent documents to a broker and stock transfer agent in connection with his MCPI

holdings.

25.      Herman also often relied on a market maker in Florida to transfer MCPI shares for

him.   The market maker would either buy shares upon request from Herman or would look out

for orders for Herman based on his understanding of the price and volume of MCPI shares

Herman wanted to sell. At the end of a trading day, Herman would typically ask the market

maker how many shares of MCPI the market maker needed to buy in order to cover his exposure

and they would mutually agree on a price and volume.   Herman then asked his broker to sell that

amount of shares at the agreed upon price to the market maker, which essentially was a no risk

trade for the market maker.

26.      Prior to and during the scheme to sell MCPI shares to the public, Herman engaged

in similar conduct to clear stock in connection with the sale of shares of other penny stocks,

including a stock that traded under the stock ticker NERG, among others.

## Conclusion

This statement of facts includes those facts necessary to support the plea agreement

between the defendant and the United States.   It does not include each and every fact known to

the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: *Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney

GLENN S. LEON

Chief, Fraud Section, Criminal Division
U.S. Department of Justice

By: _____
Andrew R. Tyler
Amanda F. Lingwood
Trial Attorneys
Bond Building

Date:  March 13, 2023

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JUSTIN WALLACE HERMAN, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JUSTIN WALLACE HERMAN

8

I am Gregory Stambaugh, defendant's attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Gregory Stambaugh, Esq.
Attorney for JUSTIN WALLACE HERMAN

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:22-CV-00121-N |
| v. ) | |
| ) | |
| **PHILLIP W. OFFILL, JR. and** ) | |
| **JUSTIN W. HERMAN,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FINAL JUDGMENT AS TO**
**<u>DEFENDANT JUSTIN W. HERMAN</u>**

The Securities and Exchange Commission ("Commission") having filed a Complaint in this action and Defendant Justin W. Herman ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and over the subject matter of this action; consented to the entry of this Final Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)    to employ any device, scheme, or artifice to defraud;

(b)      to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)      to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)      to employ any device, scheme, or artifice to defraud;

(b)      to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)      to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in

Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], Defendant is permanently restrained and enjoined from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal account.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act [17 C.F.R. 240.3a51-1].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $935,024.43, representing net profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $182,300.31, for a total of $1,117,324.74.   Defendant's obligation to pay the disgorgement and prejudgment interest ordered in this paragraph shall be deemed satisfied by the restitution of $1,385,619.41 ordered in the June 21, 2023 judgment entered in the criminal case *United States v. Phillip Windom Offill and Justin Wallace Herman*, Case No. 1:22-cr-00152-RDA-2 (E.D. Va.).

## VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

## VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the Complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement

entered in connection with this proceeding, is a debt for the violation by Defendant of the federal

securities laws or any regulation or order issued under such laws, as set forth in Section

523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

IX.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

**IT IS SO ORDERED.**

Date: _____

_____
UNITED STATES DISTRICT JUDGE